[No. 80888-1.   En Banc.]
Argued February 24, 2009.     Decided September 17, 2009.

KIMME PUTMAN, *Appellant*, v. WENATCHEE VALLEY MEDICAL
CENTER, PS, ET AL., *Respondents*.

976

*Ron Perey* and *Douglas T. Weinmaster* (of *Perey Law Group*); and *Carla T. Lawrence* (*Robert S. Peck, of counsel*), for appellant.

*Sherry H. Rogers* (of *Lee Smart*); and *Michael N. Budelsky* and *Pamela A. Okano* (of *Reed McClure*), for respondents.

*Bryan P. Harnetiaux*, *Gary N. Bloom*, and *Kelby D. Fletcher* on behalf of Washington State Association for Justice Foundation, amicus curiae.

*Mary H. Spillane* and *Daniel W. Ferm* on behalf of Washington State Medical Association, American Medical Association, Physicians Insurance, Washington Casualty Company, King County Medical Society, Pierce County Medical Society, Thurston-Mason County Medical Society, Walla Walla Valley Medical Society, Yakima County Medical Society, Washington Academy of Physician Assistants, Washington State Medical Oncology Society, and Washington State Orthopedic Association, amici curiae.

¶1 OWENS, J. — Appellant Kimme Putman sued respondents for negligently failing to diagnose her ovarian cancer. The trial judge dismissed her lawsuit because she failed to file a certificate of merit from a medical expert, as required for medical malpractice lawsuits under RCW 7.70.150. Putman challenges the constitutionality of the certificate of merit requirement on a number of grounds. We hold that RCW 7.70.150 is unconstitutional because it unduly bur-

dens the right of access to courts and violates the separation of powers.[1]

## FACTS

¶2 In 2007, Putman filed a lawsuit against Wenatchee Valley Medical Center and several of its employees, alleging that they negligently failed to diagnose her ovarian cancer in 2001 and 2002. She alleges that the delay in her diagnosis until 2005 caused her to miss the opportunity to undergo early treatment, and that she now has a 40 percent likelihood of surviving the next five years. The trial court dismissed Putman's claims because she failed to file a certificate of merit as required by the state's medical malpractice litigation statute, RCW 7.70.150. The trial court also held that the certificate of merit requirement is constitutional. Putman appealed the ruling directly to this court, alleging that RCW 7.70.150 is unconstitutional because, inter alia, it unduly burdens the right of access to courts and violates the separation of powers.

## ISSUES

1. Does RCW 7.70.150 unduly burden the right of access to courts?

2. Does RCW 7.70.150 irreconcilably conflict with procedural court rules and therefore violate the separation of powers?

## STANDARD OF REVIEW

¶3 We review the constitutionality of a statute de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008).

---

[1] Because we find that the certificate of merit requirement unduly burdens the right of access to courts and violates the separation of powers, we do not reach Putman's arguments that the certificate of merit requirement (1) violates the privileges and immunities clause of the Washington State Constitution and the equal protection clause of the United States Constitution, (2) violates the prohibition on special laws in the Washington State Constitution, and (3) violates the due process clause of the United States Constitution.

## ANALYSIS

I. Does RCW 7.70.150 Unduly Burden the Right of Access to Courts?

██ ██ ¶4 "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803). The people have a right of access to courts; indeed, it is "the bedrock foundation upon which rest all the people's rights and obligations." *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991). This right of access to courts "includes the right of discovery authorized by the civil rules." *Id.* As we have said before, "[i]t is common legal knowledge that extensive discovery is necessary to effectively pursue either a plaintiff's claim or a defendant's defense." *Id.* at 782.

██ ██ ¶5 Requiring medical malpractice plaintiffs to submit a certificate prior to discovery hinders their right of access to courts. Through the discovery process, plaintiffs uncover the evidence necessary to pursue their claims. *Id.* Obtaining the evidence necessary to obtain a certificate of merit may not be possible prior to discovery, when health care workers can be interviewed and procedural manuals reviewed. Requiring plaintiffs to submit evidence supporting their claims prior to the discovery process violates the plaintiffs' right of access to courts. It is the duty of the courts to administer justice by protecting the legal rights and enforcing the legal obligations of the people. *Id.* at 780. Accordingly, we must strike down this law.

II. Does RCW 7.70.150 Violate the Separation of Powers?

¶6 Putman contends that RCW 7.70.150's certificate of merit requirement violates the separation of powers because it conflicts with CR 8 and 11 regarding pleading requirements and thereby encroaches on the judiciary's

power to set court rules. Wenatchee Valley Medical Center argues that RCW 7.70.150 does not conflict with CR 8 and 11 and that, even if it did, CR 8 and 11 do not apply because medical malpractice claims are special proceedings. *See* CR 81(a) (exempting special proceedings from civil rules).

¶7 The Washington State Constitution does not contain a formal separation of powers clause, but " 'the very division of our government into different branches has been presumed throughout our state's history to give rise to a vital separation of powers doctrine.' " *Brown v. Owen*, 165 Wn.2d 706, 718, 206 P.3d 310 (2009) (quoting *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994)). The doctrine of separation of powers divides power into three coequal branches of government: executive, legislative, and judicial. *City of Fircrest v. Jensen*, 158 Wn.2d 384, 393-94, 143 P.3d 776 (2006), *cert. denied*, 549 U.S. 1254 (2007). The doctrine " 'does not depend on the branches of government being hermetically sealed off from one another' " but ensures "that the fundamental functions of each branch remain inviolate." *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 504, 198 P.3d 1021 (2009) (quoting *Carrick*, 125 Wn.2d at 135). If " 'the activity of one branch threatens the independence or integrity or invades the prerogatives of another,' " it violates the separation of powers. *Jensen*, 158 Wn.2d at 394 (internal quotation marks omitted) (quoting *State v. Moreno*, 147 Wn.2d 500, 505-06, 58 P.3d 265 (2002)).

¶8 Some fundamental functions are within the inherent power of the judicial branch, including the power to promulgate rules for its practice. *Id.*; *In re Disbarment of Bruen*, 102 Wash. 472, 476, 172 P. 1152 (1918). If a statute appears to conflict with a court rule, this court will first attempt to harmonize them and give effect to both, but if they cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters. *Jensen*, 158 Wn.2d at 394.

¶9 Thus, this court must determine whether RCW 7.70.150 can be harmonized with this court's rules. If it cannot, the court rule will prevail under the separation of

powers doctrine if RCW 7.70.150 involves fundamentally procedural matters. But first, the court must determine if the civil rules even apply to medical malpractice proceedings or if, instead, medical malpractice proceedings are now "special proceedings" and therefore exempt from the civil rules.

A. Are medical malpractice proceedings special proceedings and therefore exempt from the civil rules?

¶10 Wenatchee Valley Medical Center contends that medical malpractice proceedings are special proceedings and therefore exempt from CR 8 and 11 under CR 81(a), which states that "[e]xcept where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings." (Emphasis added.) The term "special proceedings" is not defined within the rule. This court has not set out a rule for determining whether a proceeding is ordinary or special, but Washington courts have identified certain actions as special proceedings, including lien foreclosures, sexually violent predator petitions, garnishment, will contests, and unlawful detainer actions.[2]

¶11 Wenatchee Valley Medical Center argues that medical malpractice proceedings are "special proceedings" because the legislature has set out statutory requirements for filing medical malpractice cases. This argument is unsustainable because it places no limits on the ability of the legislature to determine procedural rules. Under this standard, the legislature could reclassify any common law action as a special proceeding by passing statutes regulating its procedures, thereby eroding this court's power to determine its own court rules.

---

[2] See Christensen v. Ellsworth, 162 Wn.2d 365, 173 P.3d 228 (2007) (unlawful detainer actions); Zesbaugh, Inc. v. Gen. Steel Fabricating, Inc., 95 Wn.2d 600, 627 P.2d 1321 (1981) (garnishments); In re Estate of Kordon, 157 Wn.2d 206, 137 P.3d 16 (2006) (will contests); In re Det. of Aguilar, 77 Wn. App. 596, 892 P.2d 1091 (1995) (sexually violent predator petitions); Pac. Erectors, Inc. v. Gall Landau Young Constr. Co., 62 Wn. App. 158, 813 P.2d 1243 (1991) (lien claims).

¶12 A more appropriate definition of special proceedings would include only those proceedings created or completely transformed by the legislature. This would include actions unknown to common law (such as attachment, mandamus, or certiorari), as well as those where the legislature has exercised its police power and entirely changed the remedies available (such as the workers' compensation system). Other states have adopted similar standards within their civil codes, typically defining an ordinary action as one based in common law and a special proceeding as any other action. *See, e.g., Tide Water Associated Oil Co. v. Superior Court*, 43 Cal. 2d 815, 822, 279 P.2d 35 (1955); *Dow v. Lillie*, 26 N.D. 512, 520, 144 N.W. 1082 (1914). This standard protects the separation of powers because it preserves this court's abilities to set its own court rules for traditional actions but allows the legislature to set rules for newly created proceedings.

¶13 Medical malpractice claims are fundamentally negligence claims, rooted in the common law tradition. *See, e.g., Wright v. Cent. Du Page Hosp. Ass'n*, 63 Ill. 2d 313, 327, 347 N.E.2d 736 (1976). While the legislature has made some changes to medical malpractice claims, it has not extinguished the common law action and replaced it with a statutory remedy. *Cf. Lane v. Dep't of Labor & Indus.*, 21 Wn.2d 420, 428, 151 P.2d 440 (1944) (holding that the workers' compensation act "took away from the workman his common-law right of action for negligence" and "[i]n its place it provided for industrial insurance," thereby "creating the right of the workman to compensation" from the workers' compensation fund). Therefore, under the standard described above, medical malpractice suits do not qualify as special proceedings and are not exempt from the civil rules under CR 81(a).

## B.  Does RCW 7.70.150 conflict with CR 8 and 11?

¶14 RCW 7.70.150 requires plaintiffs in medical malpractice actions to file a certificate of merit with the

pleadings.[3] The certificate of merit must contain a statement from an expert that, "based on the information known at the time of executing the certificate of merit, . . . there is a reasonable probability that the defendant's conduct did not follow the accepted standard of care." RCW 7.70.150(3).

¶15 This requirement directly conflicts with CR 11, which states that attorneys do not have to verify pleadings in medical malpractice actions, as well as CR 8, which details our system of notice pleading. First, RCW 7.70.150 conflicts with CR 11 because it requires the attorney to submit additional verification of the pleadings—a requirement that CR 11 explicitly limits to "dissolution of marriage, separation, declarations concerning the validity of a marriage, custody, and [related modifications]." CR 11(a). Second, RCW 7.70.150 conflicts with CR 8 and our system of notice pleading, which requires only "a short and plain statement of the claim" and a demand for relief in order to file a lawsuit. CR 8(a). Under notice pleading, plaintiffs use the discovery process to uncover the evidence necessary to pursue their claims. *John Doe*, 117 Wn.2d at 782. The certificate of merit requirement essentially requires plaintiffs to submit evidence supporting their claims before they even have an opportunity to conduct discovery and obtain such evidence. For that reason, the certificate of merit requirement fundamentally conflicts with the civil rules regarding notice pleading—one of the primary components of our justice system.

---

[3] The first two subsections of RCW 7.70.150 state:

(1) In an action against an individual health care provider under this chapter for personal injury or wrongful death in which the injury is alleged to have been caused by an act or omission that violates the accepted standard of care, the plaintiff must file a certificate of merit at the time of commencing the action. If the action is commenced within forty-five days prior to the expiration of the applicable statute of limitations, the plaintiff must file the certificate of merit no later than forty-five days after commencing the action.

(2) The certificate of merit must be executed by a health care provider who meets the qualifications of an expert in the action. If there is more than one defendant in the action, the person commencing the action must file a certificate of merit for each defendant.

C.  Does the conflict between RCW 7.70.150 and CR 8 and 11 involve procedures or substantive law?

¶16 As noted above, if a statute appears to conflict with a court rule, this court will first attempt to harmonize them and give effect to both. *Jensen*, 158 Wn.2d at 394. If they cannot be harmonized, the court rule will prevail in procedural matters and the statute will prevail in substantive matters. Substantive law " 'creates, defines, and regulates primary rights,' " while procedures involve the " 'operations of the courts by which substantive law, rights, and remedies are effectuated.' " *Id.* (quoting *State v. Smith*, 84 Wn.2d 498, 501, 527 P.2d 674 (1974)).

¶17 Several other state supreme courts have invalidated certificate and affidavit requirements for medical malpractice litigation, holding that they conflict with court rules regarding the procedures for filing lawsuits and therefore violate the separation of powers. *See, e.g., Summerville v. Thrower*, 369 Ark. 231, 239, 253 S.W.3d 415 (2007) (invalidating a statute that required medical malpractice plaintiffs to submit an affidavit of reasonable cause from a medical expert within 30 days of filing); *Wimley v. Reid*, 991 So. 2d 135, 138 (Miss. 2008) (invalidating a statute that required the plaintiff's attorney to submit a certificate that he or she has consulted a medical expert prior to filing); *Hiatt v. S. Health Facilities, Inc.*, 68 Ohio St. 3d 236, 237-38, 1994-Ohio-294, 626 N.E.2d 71 (invalidating a statute requiring the plaintiff's attorney in a medical malpractice action to submit an affidavit attesting that he or she had requested a copy of the medical records). *But see McAlister v. Schick*, 147 Ill. 2d 84, 94, 588 N.E.2d 1151, 167 Ill. Dec. 1021 (1992) (upholding an affidavit statute, holding that the statute fell within the legislature's power to enact laws "to determine and effectuate public policy" and did not impede court's ability to control its procedures).

¶18 We hold that RCW 7.70.150 is procedural because it addresses how to file a claim to enforce a right provided by law. *See, e.g., Hiatt*, 68 Ohio St. 3d at 238 ("Since the conflict

involves the form and content of the complaint to initiate a medical malpractice case, it is a procedural matter."). The statute does not address the primary rights of either party; it deals only with the procedures to effectuate those rights. Therefore, it is a procedural law and will not prevail over the conflicting court rules.[4]

## CONCLUSION

¶19 RCW 7.70.150 unduly burdens the right of medical malpractice plaintiffs to conduct discovery and, therefore, violates their right to access courts. In addition, RCW 7.70.150 changes the procedures for filing pleadings in a lawsuit, thereby jeopardizing the court's power to set court procedures. When the activity of one branch invades the prerogatives of another, there is a violation of the doctrine of separation of powers. The court must strike down this law because it violates the right of access to courts and conflicts with the judiciary's inherent power to set court procedures. We reverse the trial court's dismissal and remand for further proceedings.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, CHAMBERS, FAIRHURST, and STEPHENS, JJ., concur.

¶20 MADSEN, J. (concurring) — Because the majority holds that RCW 7.70.150 violates the doctrine of separation of powers, reversal is appropriate in this case. Having already found the statute violates the Washington State Constitution, we need not look for additional reasons to reverse. Discussing whether the statute unduly burdens

---

[4] Amici curiae Washington State Medical Association et al. encourage us to follow several federal courts sitting in diversity that have held that certificate of merit requirements are substantive rather than procedural. However, those courts used the *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), outcome-determinative test, designed to discourage forum shopping. *See, e.g., Chamberlain v. Giampapa,* 210 F.3d 154 (3d Cir. 2000). Neither the test nor its underlying rationale applies to this court when determining whether a state statute is substantive or procedural for a separation of powers analysis.

the right of access to courts is both unnecessary and problematic. Not only am I unconvinced that the statute violates the right of access to courts, but I am also concerned that including it as a factor for the present decision will result in an excessively broad interpretation of the right in the future.

¶21 I do not dispute that there is right of access to courts inherent in article I, section 10 of the Washington State Constitution. Nor do I dispute that it includes the right to discovery, or that extensive discovery might be required. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780-82, 819 P.2d 370 (1991). However, the right to discovery is subject to limitation without violating the right of access to courts. Existing limitations on discovery include privilege, cost, and the condition that plaintiff meets pleading requirements before advancing to discovery. "[A]ccess must be exercised within the broader framework of the law as expressed in statutes, cases, and court rules." *Id.* at 782. The right to access is "necessarily accompanied by" rules of statute, court, or decisional law such as rules governing service of process or statutes of limitation. *Id.* Indeed, "recognition of a particular cause of action may depend upon judicial decisions." *Id.*

¶22 To this end, we recognize that the discovery rules contemplate differing interests among the parties and resolve these conflicts by balancing the rights and interests of the parties. *Id.* at 783; *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 362, 16 P.3d 45 (2000). Therefore, we must look beyond whether a statute potentially limits discovery before concluding it violates the right to access of courts. For example, the restriction on discovery should also be " 'unreasonable or arbitrary when balanced against the statute's purpose and basis.' " *Bailey v. Sanders*, 261 S.W.3d 153, 159 (Tex. App. 2008) (quoting *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 783 (Tex. 2007)).

¶23 Though imposing a stricter pleading requirement for malpractice or requiring supplemental materials at pleading is properly the purview of the judiciary, it is

nonetheless acceptable where the plaintiff's interests do not outweigh the legitimate interests behind the rule. The plaintiff would argue that because the trial court dismissed her claim, it denied her access to discovery and thus access to the courts. However, the plaintiff's right to discovery is subject to limitations, such as those discussed above, and has not been unconstitutionally impaired in this instance.

¶24 The requirement that a certificate of merit accompany a pleading may impede a plaintiff's ability to advance to discovery but is reasonable when balanced against the efficiency interests of the courts and the interest of the legislature in creating affordable health care. The statute serves to decrease the number of malpractice claims by requiring a plaintiff to make a preliminary showing that a medical professional believes the petitioner's claim has merit. Whether the statute is necessary or wise, the legislature was attempting, through this requirement, to curb the cost of malpractice insurance by discouraging meritless claims. If a plaintiff fails to provide a certificate of merit and the claim is dismissed, the statute requires that the suit not be included when calculating insurance rates,[5] which would, in the legislature's view, decrease the overall cost of health care.

¶25 The plaintiff insists that the burden of obtaining a certification before discovery outweighs the legislative interests but ignores that her ability to provide a certification is not dependant on the discovery provided by the defendant. The certification requires only the knowledge available at the time and a reasonable probability that the act or omission fell below the reasonable standard of care. RCW 7.70.150(3). A practitioner examining the patient and record can make this determination. Considering the high probability that the plaintiff would have to seek further

---

[5] "If a case is dismissed for failure to file a certificate of merit that complies with the requirements of this section, the filing of the claim against the health care provider shall not be used against the health care provider in professional liability insurance rate setting, personal credit history, or professional licensing and credentialing." RCW 7.70.150(5)(b).

treatment, he or she should be able to obtain a preliminary certification from a medical practitioner.[6] The petitioner argues that this may not be possible without discovery but does not consider that patients have a right to their medical records and a right to share those records with other medical providers. RCW 70.02.030, .090.

¶26 Furthermore, we have found the right to access " 'was never intended to guarantee the right to litigate entirely without expense to the litigants.' " *In re Marriage of King*, 162 Wn.2d 378, 391, 174 P.3d 659 (2007) (internal quotation marks omitted) (quoting *Doe v. State*, 216 Conn. 85, 98, 579 A.2d 37 (1990)). In this case, the plaintiff would be required to pay a reasonable fee for the reasonable time a health care provider spent in responding to discovery.[7] Inevitable cost is strong evidence against the argument that the certification is a monetary barrier to discovery.

¶27 In addition, as the Illinois Supreme Court explained when faced with a similar argument based on access to the courts, requiring a litigant to obtain a pretrial certificate from a health care professional stating that the action is meritorious "is essentially no different from the parallel requirement generally applicable in malpractice cases that the plaintiff in such an action present expert testimony to demonstrate the applicable standard of care and its breach." *DeLuna v. St. Elizabeth's Hosp.*, 147 Ill. 2d 57, 73, 588 N.E.2d 1139, 167 Ill. Dec. 1009 (1992). In Washington, as well, a plaintiff will generally have to obtain expert testimony to establish the relevant standard of care and causation in a malpractice action against a health care provider. *Harris v. Robert C. Groth, MD, Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983). No greater burden is placed on the plaintiff's access to courts by the certification requirement

---

[6] The plaintiff was able to obtain certificates of merit for claims against two other defendants, suggesting her failure to do so here was merely an oversight and that the requirement does not make advancing to discovery impossible.

[7] CR 26(b)(5)(C) provides in part that a party seeking discovery must "pay the expert a reasonable fee for time spent in responding to discovery" unless manifest injustice would result.

than is placed by the requirement that an expert establish these elements of a medical malpractice action.

¶28 Moreover, a finding that RCW 7.70.150 violates the right of access to the courts is inconsistent with the principles established in other cases. Plaintiffs challenge, for example, statutes of limitation on the basis that they deny access to the courts. However, there is a general reluctance to hold statutes of limitation unconstitutional in the face of a public interest of finality. The Delaware Supreme Court held, "[T]he test for constitutionality of the statute was whether the time period before the bar became effective was so short as to amount to a denial of the right itself." *Dunn v. St. Francis Hosp., Inc.*, 401 A.2d 77, 80 (Del. 1979); *see also Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 60, 514 N.E.2d 709 (1987) (holding a medical malpractice statute of repose requiring an action to be commenced four years after a negligent act violated the state constitution's "open courts" provision when plaintiff was unable to discover existence of claim until three years after negligent act). In the instant case, we are not weighing a complete bar to plaintiff's claim against the strong competing interests, so a conclusion that the statute denies access to court does not follow.

¶29 The problem with not ruling in accordance with the established principle is the almost certain increase in challenges to unfavorable changes in statutes and court rules. Notwithstanding a reversal or reconsideration, the legislature would be powerless to effect statutory change where the change would threaten plaintiffs' right to relief, even where there are strong countervailing interests.

¶30 The court should weigh all competing interests against the extent to which the statute burdens the plaintiff's right to access to the court when deciding whether the statute violates the right. In this case, the legislature's interest to curb malpractice insurance costs outweighs the moderate burden on the plaintiff.

¶31 In balancing the interests, the court should bear in mind the fact that just because a burden is imposed does

not mean that the right to access is violated. The majority neglects this principle when it concludes that the certificate requirement "hinders" plaintiffs' right of access to the courts. Majority at 979. The majority goes on to say it "may not be possible" for a plaintiff to obtain such a certificate. *Id.* As explained throughout this opinion, a number of rules and requirements "hinder" a party's access, but whether there is an impediment, burden, or hindrance is not dispositive of the question of access. Nor is speculation that the law will not work. This court has no ground to conclude that the law in fact will not be implementable as intended.

¶32 The majority's limited, speculative, and narrow assessment of the interests at stake is insufficient basis for the conclusion that RCW 7.70.150's certificate of merit requirement violates the right of access to the courts.

¶33 In addition to hobbling the legislature's ability to set standards for justice, the conclusion that this statute violates the right to access similarly encumbers the judiciary in its ability to establish court rules. Just as the legislature is bound by our state constitution, this court is also subject to its requirements. *Burns v. Alderson*, 51 Wn.2d 810, 812, 322 P.2d 359 (1958). The precedent the majority proposes would require us to find our own similar changes in court rules violate the right of access to the courts doctrine. Following the majority's precedent, we would face countless challenges to these rules. To preserve our right to set court rules, the court should not hold that the statute violates the right of access to the courts.

J.M. JOHNSON, J., concurs with MADSEN, J.